E. BRYAN WILSON
Acting United States Attorney

RYAN D. TANSEY
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
101 12th Avenue, Room 310
Fairbanks, Alaska 99701
Phone: (907) 456-0245
Fax: (907) 456-0577
Email: Ryan.Tansey@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>RYAN DALBEC, RAIHANA NADEM, a/k/a RAIHANA DALBEC, and BRIAN LOWELL NASH II,<br><br>Defendants. | No. 4:21-cr-00011-RRB-SAO<br><br><u>COUNT 1</u>:<br>CONSPIRACY TO COMMIT BRIBERY<br>  Vio. of 18 U.S.C. § 371<br><br><u>COUNTS 2-5</u>:<br>BRIBERY OF A PUBLIC OFFICIAL<br>  Vio. of 18 U.S.C. § 201(b)(1)(A) and (C)<br><br><u>COUNTS 6-9</u>:<br>ACCEPTANCE OF BRIBE BY A PUBLIC OFFICIAL<br>  Vio of 18 U.S.C. § 201(b)(2)(A) and (C)<br><br><u>COUNTS 10-26</u>:<br>MONEY LAUNDERING<br>  Vio of 18 U.S.C. § 1956(a)(1)(B)(i) and (ii) |

| | ) | CRIMINAL FORFEITURE |
| | ) | ALLEGATION: |
| | ) | 18 U.S.C. § 981(a)(1)(c), and 28 |
| | ) | U.S.C. § 2461(c) |
| | ) | |

I N D I C T M E N T

The Grand Jury charges at all times relevant to this Indictment:

The Defendants and their Co-Conspirators

1. Defendant RYAN DALBEC ("DALBEC") was a United States citizen residing in North Dakota and later Virginia. DALBEC was the manager of Best Choice Construction LLC ("Best Choice"), which was a limited liability company organized and existing under the laws of North Dakota, with its principal place of business in Fargo, North Dakota. It listed an address at 3664 Cordova Loop S., Fargo, ND 58104. Through Best Choice, DALBEC submitted bids for and was awarded U.S. military contracts in Alaska, including contracts to perform work at Eielson Air Force Base ("Eielson AFB") and at Joint Base Elmendorf-Richardson ("JBER").

2. RAIHANA NADEM, a/k/a RAIHANA DALBEC ("NADEM") was a citizen of Afghanistan residing in North Dakota and later Virginia. NADEM was married to DALBEC and was the owner and registered agent of Best Choice. NADEM assisted DALBEC in the daily management of Best Choice, including with the preparation and submission of bids for U.S. military contracts in Alaska, including contracts at Eielson AFB and JBER.

3. BRIAN LOWELL NASH II ("NASH") was an enlisted E-4 Senior Airman Contract Specialist in the U.S. Air Force. NASH was a member of the 673rd Contracting Squadron assigned to JBER. As part of his regular duties as a Contract Specialist, NASH was authorized to award and administer contracts up to $250,000, and had access to non-public information, such as competitive bid information and Independent Government Cost Estimates, on Alaska U.S. Military contracts that exceeded $250,000. In his role as an E-4 Senior Airman Contract Specialist in the U.S. Air Force, NASH was a public official within the meaning of 18 U.S.C. § 201. As part of his duties, NASH signed a "Source Selection Non-Disclosure Agreement… covering all Source Selections processed or reviewed," pursuant to which he affirmed, in relevant part, that he was: "knowledgeable of 41 U.S.C. 2101-2107 and FAR 3.104" and "aware that unauthorized disclosure of contractor bid or proposal information or source selection information could damage the integrity of this procurement and that the transmission or revelation of such information to unauthorized persons could subject me to prosecution under 41 U.S.C. 2101-2107 or under other applicable laws." He further affirmed as part of his duties that: "I will not divulge, publish, or reveal by word, conduct, or any other means, such information or knowledge, except as necessary to do so in the performance of my official duties related to this source selection and in accordance with the laws of the United States, unless specifically authorized in writing in each and every case by a duly authorized representative of the United States Government."

//

Background

4. The United States Air Force was a branch of the United States Armed Forces, a component of the U.S. Department of Defense.

5. Eielson AFB was a United States Air Force facility located 26 miles southeast of Fairbanks, Alaska. One of its missions was to prepare U.S. and allied aviation forces for combat, to deploy Airmen in support of global operations, and to enable the staging of forces to promote U.S. interests in the Asia-Pacific region. As the U.S. Air Force's most northern operational wing, its units also host Air Education and Training Command's Arctic Survival School. The 354th Contracting Squadron was responsible for soliciting contracts for planning, building and maintenance of Air Force facilities at Eielson.

6. JBER was a United States military facility located in Anchorage, Alaska. JBER was formed in 2010 when the United States Air Force's Elmendorf Air Force Base merged with the United States Army's Fort Richardson. Its mission was to support and defend U.S. interests in the Asia-Pacific region and around the world by providing units who are ready for worldwide air power projection and a base that is capable of meeting PACOM's theater staging and throughput requirements. The 673rd Contracting Squadron, to which NASH was assigned, was responsible for soliciting contracts for planning, building and maintenance of Air Force facilities at JBER.

7. The Contracting Squadrons at Eielson AFB and JBER award contracts via a full and open competitive procurement process in which competing bidders submit bids

in order to be considered for the award of a particular contract. Bidding information was confidential and competing bidders were not permitted to view each others' bids.

8. The Contracting Squadrons at Eielson AFB and JBER reviewed each final bid and awarded the contracts based on the lowest qualified bid price submitted. These federal government contracts could be awarded only upon the submission and consideration of bids, or best price quotes, from more than one company.

9. An Independent Government Cost Estimate ("IGCE") is an internal estimate, created by the government, to estimate a contract's potential costs. The IGCE is generally prepared by either the Government's own design engineer or estimator, or by the architectural and engineering firm that prepared the design. The IGCE is "For Official Use Only," and is not to be released to the public "under any circumstances" unless the Contracting Officer deems it necessary. The Contracting Officer is the only person who has the authority to disclose the IGCE because disclosure may put the Government at a competitive disadvantage in negotiating the contract.

## Contracts

10. On or about February 27, 2019, JBER issued solicitation FA500019QA005 for companies to bid on a contract to perform asbestos removal services from Building 802 on JBER ("Asbestos Abatement Contract 1"). Bids were due by March 12, 2019. Contract FA500019PA021 was awarded to Best Choice on or around March 19, 2019. The total award amount for this contract was $725,000.

11. On or about February 28, 2019, JBER issued solicitation FA500019QA010 for companies to bid on a contract to perform asbestos removal services from Building

804 on JBER ("Asbestos Abatement Contract 2"). Bids were due by March 12, 2019. Contract FA500019PA026 was awarded to Best Choice on or around March 19, 2019. The total award amount for this contract was $467,000.

12. On or about April 24, 2019, Eielson AFB issued solicitation FA500419BA008 for companies to bid on a contract to perform renovation and repairs of Building 2262 on Eielson AFB to house permanent party Airmen associated with the bed-down of the new F-35A fighter aircraft ("Eielson F-35 Building Contract"). Bids were due by July 25, 2019. Contract CFA500420C0003 was awarded to Best Choice on or around October 24, 2019. The total award amount for this contract was $6,850,000.

13. On or about May 23, 2019, Eielson AFB issued solicitation FA500419BA014 for companies to bid on a contract to perform roof repair services on Eielson AFB ("Eielson Roof Repair Solicitation"). On July 23, 2019, the solicitation was cancelled prior to award.

14. On or about August 6, 2019, JBER issued solicitation FA500019QA082 for companies to bid on a contract to perform repair and replacement work at the upper and lower Nike Site Summit, a former U.S. Army Nike Hercules missile installation located near the eastern edge of JBER ("Nike Contract"). Bids were due by September 6, 2019. Contract FA500019PA164 was awarded to Best Choice on or around September 20, 2019. The total award amount for this contract was $210,000.

//

//

## COUNT 1

15. Paragraphs 1 through 14 of this Indictment are re-alleged and incorporated by reference as if fully set forth herein.

16. Beginning in or about March 2019, and continuing until in or about November 2019, within the District of Alaska and elsewhere, the defendants, RYAN DALBEC, and RAIHANA NADEM, a/k/a RAIHANA DALBEC, knowingly conspired, confederated, and agreed with BRIAN LOWELL NASH II, a public official, and others known and unknown to the grand jury, to commit bribery; that is, (a) for DALBEC and NADEM to directly and indirectly, corruptly give, offer, and promise things of value to NASH with the intent to influence NASH in the performance of his official acts and to induce NASH to do or omit to do an act in violation of his lawful duty, in violation of 18 U.S.C. § 201(b)(1)(A) and (C); and (b) for NASH to directly and indirectly, corruptly demand, seek, receive, accept, and agree to receive and accept things of value from DALBEC and NADEM, in return for NASH being influenced in the performance of his official acts and being induced to do or omit to do an act in violation of his official duties, in violation of 18 U.S.C. § 201(b)(2)(A) and (C); and DALBEC, NADEM, and NASH, among others took overt acts in furtherance of the conspiracy and to effect its unlawful objects.

## OBJECT OF THE CONSPIRACY

17. It was the object of the conspiracy for DALBEC and NADEM to obtain from NASH confidential, non-public bidding information concerning U.S. military contracts in Alaska; and in return, for DALBEC and NADEM to give and promise NASH

cash and other things of value, both as upfront payments and as a percentage of the total value of contracts won using the information that NASH provided.

## MANNERS AND MEANS

18. In furtherance of this conspiracy, and to accomplish its object, the following manners and means were used, among others:

    a. NASH would demand, seek, receive, accept and agree to receive and accept cash, a percentage of the contract value, and other things of value from DALBEC and NADEM.

    b. DALBEC and NADEM would give, offer, and promise cash, a percentage of the contract value, and other things of value to NASH.

    c. In return for these things of value, NASH would provide DALBEC and NADEM with internal, proprietary bid or proposal information, including the IGCE and other confidential, non-public bidding information concerning U.S. military contracts in Alaska.

    d. Using the information that NASH provided, DALBEC and NADEM would bid on and win U.S. military contracts in Alaska.

    e. DALBEC, NADEM, and NASH sought to conceal their corrupt relationship, including by using NASH's personal email account, NASH using a "burner" phone, and by wiring money to third party bank accounts and individuals.

//
//

OVERT ACTS

19. In furtherance of the conspiracy and to effect its illegal object, the defendants and their co-conspirators committed the following overt acts, among others:

OA1 In or about March 2019, NASH and DALBEC met in Alaska and agreed that NASH would provide DALBEC and NADEM with confidential, non-public bidding information about U.S. military contracts in Alaska, such as the IGCE and competitors' bidding information, in exchange for money from DALBEC and NADEM.

OA2 On or about March 19, 2019, April 4, 2019, and April 8, 2019, DALBEC paid NASH a total of $45,000 in cash in exchange for NASH providing DALBEC and NADEM with confidential, non-public information regarding bidding on Asbestos Abatement Contract 1 and Asbestos Abatement Contract 2.

OA3 On or about April 14, 2019, DALBEC sent a text message to NADEM stating that he paid NASH "$45,000 cash" in relation to Asbestos Abatement Contract 1 and Asbestos Abatement Contract 2.

OA4 On or about June 19, 2019, DALBEC wired $7,000 to into the bank account of NASH's relative to disguise and conceal the source and control of the bribe payment.

OA5 On or about June 27, 2019, DALBEC and NADEM agreed to pay NASH $50,000 in exchange for confidential, non-public bidding information related to the Eielson Roof Repair Contract, if Best Choice was awarded the contract.

OA6 On or about June 27, 2019, NASH sent a text message to DALBEC regarding the Eielson Roof Repair Solicitation, stating that "7% is the price, my contact

Page 9 of 18

Case 4:21-cr-00011-RRB-SAO   Document 2   Filed 03/18/21   Page 9 of 18

at eileson wants 2%. All i can give you is the gov estimate bec this is a sealed bid solicitation but it should be very accurate as this is comparable to other projects they have done." DALBEC replied, "What's the government estimate."

OA7 On or about June 27, 2019, NADEM sent a text message to NASH, stating that she would pay NASH "50k upon award [of the Eielson Roof Repair Solicitation] you have my word."

OA8 On or about June 29, 2019, DALBEC, NADEM and NASH agreed that NASH would provide DALBEC and NADEM with confidential, non-public information regarding the bidding for the Eielson F-35 Building Contract. In exchange, DALBEC and NADEM agreed to pay NASH $1,000 cash for the information, plus 5% of the contract value (approximately $355,000), $50,000 of which was to be paid upon award if Best Choice was awarded the contract. NASH and NADEM exchanged the following text messages concerning this agreement:

> NASH: 5% is the price. 50k on award. I can do biweekly payments for the rest. Fair?
>
> NADEM: Agreed. What amount we should bid
>
> NASH: 7.1M just make sure you cover all aspects of the ktr [contract]. This will be huge for future kts [contracts] and credibility as well

OA9 On or about July 17, 2019, NASH sent a text message to NADEM stating "FA5004-19-B-A014 /// $1.08M IGE," by which NASH was informing NADEM that $1.08 million was the IGCE for the Eielson Roof Repair Solicitation. NADEM replied "perfect let me check." Later, NASH text messaged NADEM: "As per our new

agreement, $1k and 5% if you get award. Also, i would always bid a bit under IGE. They wont admit it but they usually get their IGE from the company they want to do it."

OA10 On July 18, 2019, DALBEC, NADEM and NASH exchanged the following text messages regarding their agreement concerning the Eielson F-35 Building Contract:

> DALBEC: 1000 if we lose for information and 5% if we win as a partnership so you get paid either way it's in your benefit
>
> NASH: Correct, but when do I get the 1000? It's a lot of risk on my end and my "contacts" are asking me for $ for just the info which is why I brought it up to begin with.
>
> NADEM: Of course we will take care of that tomorrow the first thing
>
> NASH: Thank you, Ill work to come up with more opportunities that I can guarantee rather than just give the IGCE
>
> NADEM: Highly appreciated

OA11 On July 18, 2019, NASH sent DALBEC a text message stating: "As with the agreement with your wife that is 2 projects IGEs i have gave you. How am i going to get paid the $1,000 for each of their information? Can you wire to the same acc[ount] as before? I will see what other info I can squander. The more you help me, i will help you."

OA12 On or about July 19, 2019, DALBEC and NADEM paid NASH $1,000 in exchange for the non-public information NASH provided regarding the Eielson F-35 Building Contract FA500420C0003.

OA13 On August 22, 2019, NASH provided DALBEC and NADEM with confidential, non-public bidding information regarding the Nike Contract.

OA14 On or about September 17, 2019, DALBEC met NASH and paid him $1,000 cash in exchange for the non-public information that NASH provided regarding

the Nike Contract. DALBEC and NASH also discussed how DALBEC and NADEM would pay NASH the $355,000 in bribe payments for the information NASH provided that helped Best Choice win the F-35 Building Contract. DALBEC expressed concern that "you can't hide" large amounts of money, "even in transfers." Instead, DALBEC proposed that Best Choice "can purchase bonds as an asset for itself" and then could "gift the bonds" to NASH. DALBEC later stated in reference to the bribe payments: "it's got to be done right. Otherwise, criminal offense."

OA15 On October 18, 2019, NASH sent the following group text message to DALBEC and NADEM: "Rihanna & Ryan, Hey the 10k still hasn't hit…account yet and I need it before I deploy for family and stuff. Please call ASAP." This was a reference to the $10,000 bribe payment that DALBEC and NADEM promised NASH for information that NASH provided regarding the Nike Contract. Approximately 15-minutes later, NASH called NADEM. NADEM answered and said, "I was going to text you back, but you called, good you called so uh I will get on it right now and then today we're going to take care of it." NASH asked NADEM when to expect the $10,000 bribe payment. NADEM replied that DALBEC will get on it "likely today" and that "I will text you whenever it's going to be available." NASH then asked if he should expect two payments of $5,000 each, and NADEM asked "Ryan, are we doing two payments baby?" NADEM followed up, saying that two payments were better, and that "I will do both today to get this done." After NASH asked if NADEM needed the account information for payment, NADEM replied that she had the account information but DABLEC was

Page 12 of 18

Case 4:21-cr-00011-RRB-SAO    Document 2    Filed 03/18/21    Page 12 of 18

handling work related problems. NASH offered to send NADEM the account information, to which NADEM replied, "perfect, thank you so much...."

OA16 After the call, NASH texted NADEM the information for a bank account opened in the name of a third party named "Mark Watkins." NADEM replied "thank you so much."

OA17 On or about October 21, 2019, NADEM paid NASH $9,500 via wire transfer in exchange for the non-public information that NASH provided regarding the Nike Contract. NADEM structured the payment to avoid federal transaction reporting requirements and made the deposit into a third party's bank account.

OA18 On or about October 22, 2019, NASH texted DALBEC and NADEM: "Got the money. Thanks guys. Will be in touch about first full week in November. I should be in your area." NADEM replied: "Sure thanks."

All of which is in violation of 18 U.S.C. § 371.

## COUNTS 2-5

20. Paragraphs 1 through 14 of this Indictment are re-alleged and incorporated by reference as if fully set forth herein.

21. On or about the dates set forth below in Column "A," the defendants, RYAN DALBEC, and RAIHANA NADEM, a/k/a RAIHANA DALBEC, did directly and indirectly, corruptly give, offer, and promise to Brian Lowell Nash II, a public official, the things of value set forth in Column "B" with the intent to influence Nash in the performance of his official acts and to induce Nash to do or omit to do an act in violation of his lawful duty, to wit: providing DALBEC and NADEM with confidential,

non-public information, such as the IGCE and competitor bidding information, regarding U.S. military contracts in Alaska, each constituting a separate and distinct count of this Indictment:

| COUNT | "A" – DATE | "B" – ITEMS OF VALUE | CONTRACT |
|---|---|---|---|
| 2 | March – April 2019 | $45,000 | Asbestos Abatement Contracts 1 and 2 |
| 3 | June 2019 | $50,000 | Eielson Roof Repair Contract |
| 4 | July 2019 | $356,000 | Eielson F-35 Building Contract |
| 5 | August – September 2019 | $10,500 | Nike Contract |

All of which is in violation of 18 U.S.C. § 201(b)(1)(A) and (C).

## COUNTS 6-9

22. Paragraphs 1 through 14 of this Indictment are re-alleged and incorporated by reference as if fully set forth herein.

23. On or about the dates set forth below in Column "A," the defendant, BRIAN LOWELL NASH II, a public official, did directly and indirectly, corruptly demand, seek, receive, and accept and agree to receive and accept from defendants DABLEC and NADEM the things of value set forth in Column "B" with the intent to be influenced in the performance of his official acts and being induced to do or omit to do an act in violation of his official duties, to wit: providing DALBEC and NADEM with confidential, non-public information, such as the IGCE and competitor bidding information, regarding U.S. military contracts in Alaska, each constituting a separate and distinct count of this Indictment:

| COUNT | "A" – DATE | "B" – ITEMS OF VALUE | CONTRACT |
|---|---|---|---|
| 6 | March – April 2019 | $45,000 | Asbestos Abatement Contracts 1 and 2 |
| 7 | June 2019 | $50,000 | Eielson Roof Repair Contract |
| 8 | July 2019 | $356,000 | Eielson F-35 Building Contract |
| 9 | August – September 2019 | $10,500 | Nike Contract |

All of which is in violation of 18 U.S.C. § 201(b)(2)(A) and (C).

## COUNTS 10-26

24. Paragraphs 1 through 14 of this Indictment are re-alleged and incorporated by reference as if fully set forth herein.

25. On or about the dates set forth below in Column "B," within the District of Alaska and elsewhere, the defendants, RYAN DALBEC, RAIHANA NADEM, a/k/a RAIHANA DALBEC, and BRIAN LOWELL NASH II, knowing that the property involved in each of the financial transactions set forth below in Column "C" represented the proceeds of some form of unlawful activity, knowingly conducted, attempted to conduct, and willfully caused to be conducted, the below financial transactions affecting interstate commerce, which transactions, in fact, involved the proceeds of specified unlawful activity, namely, bribery and acceptance of a bribe by a public official, in violation of 18 U.S.C. § 201(b), knowing that each of the transactions was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of such specified unlawful activity, and knowing that each of the transactions was designed to avoid a transaction reporting requirement under State or

Federal law, with each financial transaction constituting a separate and distinct count of this Indictment as to the defendant set forth below in Colum "A":

| COUNT | "A" – DEFENDANT | "B" – DATE | "C" – FINANCIAL TRANSACTION |
|---|---|---|---|
| 10 | NASH | March 19, 2019 | The transfer of $2,000 cash from NASH to his relative K.N. via Walmart MoneyGram |
| 11 | NASH | March 20, 2019 | The transfer of $800 from NASH's relative K.N. to NASH's bank account via Zelle Transfer |
| 12 | NASH | March 22, 2019 | The transfer of $2,500 cash from NASH to his relative K.N. via Walmart MoneyGram |
| 13 | NASH | March 23, 2019 | The transfer of $2,000 from NASH's relative K.N. to NASH's bank account via Zelle Transfer |
| 14 | NASH | March 24, 2019 | The transfer of $250 from NASH's relative K.N. to NASH's bank account via Zelle Transfer |
| 15 | NASH | April 5, 2019 | The transfer of $2,500 cash from NASH to his relative K.N. via Walmart MoneyGram |
| 16 | NASH | April 6, 2019 | The transfer of $2,000 from NASH's relative K.N. to NASH's bank account via Zelle Transfer |
| 17 | NASH | April 7, 2019 | The transfer of $400 from NASH's relative K.N. to NASH's bank account via Zelle Transfer |
| 18 | DALBEC | June 19, 2019 | The transfer of $7,000 from DALBEC's bank account into NASH's relative M.W.'s bank account via Wire Transfer |
| 19 | NASH | June 19, 2019 | The transfer of $2,000 from NASH's relative M.W.'s bank account into NASH's bank account via Zelle Transfer |
| 20 | NASH | June 20, 2019 | The transfer of $2,000 from NASH's relative M.W.'s bank account into NASH's bank account via Zelle Transfer |
| 21 | NASH | June 22, 2019 | The transfer of $2,000 from NASH's relative M.W.'s bank account into NASH's bank account via Zelle Transfer |

| 22 | NASH | July 23, 2019 | The transfer of $1,000 from NASH's relative M.W.'s bank account into NASH's bank account via Zelle Transfer |
| 23 | NASH | July 24, 2019 | The transfer of $900 from NASH's relative M.W.'s bank account into NASH's bank account Zelle Transfer |
| 24 | NASH | July 26, 2019 | The transfer of $1,000 from NASH's relative M.W.'s bank account into NASH's bank account via Zelle Transfer |
| 25 | NASH | September 9, 2019 | The transfer of $1,000 from NASH's relative M.W.'s bank account into NASH's bank account via Zelle Transfer |
| 26 | NADEM | October 21, 2019 | The transfer of $9,500 into a third party bank account designated by NASH via Wire Transfer |

All of which is in violation of 18 U.S.C. § 1956(a)(1)(B)(i) and (ii).

//

//

//

//

//

//

//

//

//

//

//

//

Page 17 of 18

Case 4:21-cr-00011-RRB-SAO   Document 2   Filed 03/18/21   Page 17 of 18

CRIMINAL FORFEITURE ALLEGATION

26. The allegations set forth in Counts 1 through 26 are incorporated herein by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. § 981(a)(1)(c), and 28 U.S.C. § 2461(c).

27. Pursuant to Federal Rule of Criminal Procedure 32.2, notice is hereby given to the above-named defendants that the United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. § 981(a)(1)(c), and 28 U.S.C. § 2461(c), including but not limited to all property, real or personal, which constitutes or is derived from proceeds traceable to a conspiracy to commit bribery, the bribery of a public official, or money laundering, as charged in this Indictment.

All pursuant to 18 U.S.C. § 981(a)(1)(c), and 28 U.S.C. § Section 2461(c).

A TRUE BILL.

s/ Grand Jury Foreperson
GRAND JURY FOREPERSON

s/ Kyle Reardon for
RYAN D. TANSEY
Assistant U.S. Attorney
United States of America


s/ E. Bryan Wilson
E. BRYAN WILSON
Acting United States Attorney
United States of America


DATE:   March 16, 2021